**THE FLEISHMAN LAW FIRM**
Charles J. Fleishman Bar# 46405
Paul A. Fleishman Bar# 251657
19839 Nordhoff St., Northridge, California 91324
Telephone: (818) 350-6285
FAX: (818) 350-6272
erisa@erisarights.com
Attorneys for **Plaintiff**

**SEDGWICK LLP**
REBECCA A. HULL  Bar No. 99802
rebecca.hull@sedgwicklaw.com
ERIN A. CORNELL  Bar No. 227135
erin.cornell@sedgwicklaw.com
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105-1008
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Defendant
Metropolitan Life Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GORDON, | Case No. 5:10-cv-5399 EJD (HRL) |
| Plaintiff, | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |
| v. | |
| METROPOLITAN LIFE INSURANCE COMPANY, a corporation; DOES 1 through 10, inclusive, | **Date:** February 19, 2015<br>**Time:** 10:00 a.m.<br>**Loc.:** Ctrm. "4" |
| Defendants. | **Honorable Judge Edward J. Davila** |

**a.  Date Case Was Filed:**

November 29, 2010

**b.  List of All Parties:**

Plaintiff:  Robert Gordon

1

Joint Case Management Statement

Defendant: Metropolitan Life Insurance Company ("MetLife"), a corporation;

### c. History of the Case:

Plaintiff's Statement:

Mr. Gordon originally worked for Ashton-Tate from 1989 until it was bought by Borland Software in 1991. Mr. Gordon worked for Borland Software Corporation (Borland) from 1991 until February of 2002, at which time he became disabled due in part to mental/emotional problems. After having received short term disability benefits based in part on his mental/emotional problems for several months, on May 1, 2002 Borland sent a letter to Plaintiff claiming that his life insurance and disability coverage ended on May 1, 2002. Mr. Gordon has been unable to work since February, 2002.

On October 22, 2009 Plaintiff filed a claim seeking long term disability benefits through his employer provided benefit plan with Metropolitan Life Insurance Company (MetLife). On May 7, 2010 MetLife denied Plaintiff's claim based on its inability to verify Plaintiff's LTD coverage as an eligible employee with Borland.

On May 4, 2010 Plaintiff provided MetLife with Borland Incentive Compensation Program Evaluations regarding the Plaintiff for 2001 and 2002, a Borland Performance Appraisal regarding the Plaintiff from April 1, 2004, Plaintiff's W-2s from Borland from 2000 and 2001 and a Borland payment summary from April 2002. On May 25, 2010 Plaintiff provided MetLife with Borland's contact information including its website, the address of Borland's corporate office, and Borland's corporate office's telephone number.

After May 2010 MetLife effectively ignored all of Plaintiff's further correspondences, including several requests to be provided the plan documents and the administrative record regarding Plaintiff's claim.

Plaintiff appealed MetLife' adverse benefit decision on August 11, 2010. MetLife ignored Plaintiff's appeal. Plaintiff filed this action on November 29, 2010.

In December 2011, the parties agreed to a remand of Plaintiff's claim for long term disability ("LTD") benefits under the Plan, to allow MetLife the opportunity to reconsider its previous denial of plaintiff's claim. On April 2, 2012 MetLife overturned its original

determination that Plaintiff was not an eligible employee with Borland, the sole reason Plaintiff's claim was originally denied, and provided him with forms to be completed and returned.

After April 4, 2012 neither Plaintiff nor his counsel received anything from MetLife until August 15, 2012. On August 15, 2012, MetLife's counsel emailed Plaintiff's counsel a copy of a letter dated August 3, 2012 and physician consultant review. The August 3 letter, emailed to Plaintiff's counsel on August 15, 2012, claimed that the consultant's report was faxed to three of Plaintiff's treating physicians on August 3, 2012. However, Plaintiff's counsel subsequently received faxes from all three treating physicians indicating that those doctors did not receive any physician consultant review from MetLife regarding Mr. Gordon.

On December 7, 2012, approximately a year after the parties agreed to remand the matter, and eight months after MetLife overturned its original decision, MetLife finally notified Plaintiff of its decision to deny his claim based on an entirely new reason, requiring Plaintiff to again appeal a new denial.

Plaintiff appealed MetLife's brand new reason for denying Plaintiff's claim and submitted further information and documentation from Plaintiff's treating physicians in support of his claim. MetLife hired medical record reviewers to review Plaintiff's medical records. There followed much back and forth between MetLife's record reviewers and Plaintiff's treating physicians. Finally, on August 25, 2014 this writer wrote to MetLife that there would not be any more responses from Mr. Gordon's treating physicians and sought a decision on his claim.

MetLife did not make any decision on Plaintiff's claim, so on November 12, 2014 Plaintiff moved the Court to reopen the case and the Court granted Plaintiff's motion on January 2, 2015. According to MetLife, "Based upon the Court's Order Granting Plaintiff's Motion to Reopen Case, wherein the Court ordered the case restored to active litigation so that it may proceed in parallel to any remaining administrative proceedings, MetLife is moving forward with rendering its decision and expects to issue the decision within the next week." So had Plaintiff not moved to reopen the case, and had the court not granted Plaintiff's motion and reopened the

1 case, MetLife would not have moved forward with rendering its decision?  What was MetLife
2 doing for the **four months** leading up to the reopening of the case?

4      <u>MetLife's Statement:</u>
5      MetLife does not agree with plaintiff's incomplete summary of the facts, as set forth above,
6 and provided a general summary of the relevant facts as follows:
7      Plaintiff seeks long term disability ("LTD") benefits under the Borland Software
8 Corporation Employee Benefits Plan ("Plan").  Plaintiff claims a disability start date of February
9 2002, but he did not make a claim for LTD benefits under the Plan until October 2009.  MetLife
10 denied plaintiff's claim because it had insufficient information to establish plaintiff's coverage
11 under the Plan as of the date he stopped working.
12      In December 2011, the parties agreed to a voluntary remand of plaintiff's claim for LTD
13 benefits under the Plan, to permit plaintiff to submit additional documents and records in support of
14 his claimed eligibility for coverage under the Plan.  On March 30, 2012, MetLife issued a letter
15 informing plaintiff that MetLife had determined that plaintiff was eligible for coverage through May
16 1, 2002.  That letter, however, also advised that pursuant to the agreement to remand, MetLife
17 needed additional information in order to complete the next step of the process – determining
18 whether plaintiff met the Plan's definition of "disability" and all other relevant terms and provisions
19 of the Plan as of the date he stopped working, such as to potentially entitled him to receive LTD
20 benefits under the Plan.
21      Following its investigation, including engaging the services of an independent physician
22 consultant ("IPC") to review plaintiff's file and provide an opinion regarding plaintiff's
23 functionality during the relevant time period, on December 7, 2012, MetLife sent plaintiff's counsel
24 a letter stating that it had determined that plaintiff was not disabled as that term is defined in the
25 Plan as of May 1, 2002, the date his covered under the Plan ended.  Information was given
26 regarding how plaintiff could appeal this determination, which he should do within 180 days.
27      Contrary to plaintiff's assertions above, this is not an "entirely new reason" to deny
28 plaintiff's claim but rather, part of the agreement between the parties and further, is consistent with

4

Joint Case Management Statement

the terms of the Plan, which require that in order for a plan participant to receive LTD benefits, the participant must (1) actually be a participant in and covered under the Plan and (2) meet the Plan's definition of "disability" and all other terms and conditions of the Plan.

On May 13, 2013, MetLife received plaintiff's appeal. Since then, as demonstrated below, there has been much back and forth between the parties and ongoing investigation on MetLife's part, as to plaintiff's entitlement to benefits under the Plan. Plaintiff's attorney requested and was granted several opportunities to respond to the reports received from the IPCs retained by MetLife.

Following the receipt of plaintiff's appeal, on May 16, 2013, plaintiff's file was referred for a medical review by a nurse consultant. On May 23, 2013, plaintiff's file was referred for a psychiatric review by a Psychiatric Clinical Specialist. On June 7, 2013, additional medical records were received from the claimant's counsel. On June 19, 2013, MetLife sent a letter to plaintiff's counsel stating that it needed an extension of time.

On July 11, 2013, the file was referred to Independent Physician Consultants ("IPCs") in occupational medicine and psychiatry. On August 5, 2013, a report was received from the occupational medicine IPC, which provided a medical opinion and indicated that he had attempted to schedule a telephone conference with plaintiff's treating physician, Dr. Resneck-Sannes, on July 25, July 30, and August 5, 2013, but that he had not received a call back.

On August 8, 2013, a report was received from the psychiatric IPC, providing a medical opinion and indicating that he had attempted to schedule a telephone conference with Dr. Abrabanel on July 16 and July 17, 2013, with no response.

On August 8, 2013, MetLife received additional medical records from plaintiff's attorney. On August 25, 2013, MetLife received addenda from the IPCs, which were sent to plaintiff's attorney.

On September 26, 2013, a letter was received from plaintiff's attorney disagreeing with the IPC opinions. On November 20, 2013, another letter was received from plaintiff's attorney. On January 24, 2014, additional questions were sent to the IPCs for responses. On January 31, 2014, the IPCs provided addenda reports.

Joint Case Management Statement

On February 4, 2014, a letter was received from plaintiff's counsel submitting a letter from the treating physician. On March 17, 2014, MetLife received an addenda report from IPC Dr. Sugerman. On March 22, 2014, an addenda report was received from IPC Dr. St. Clair. On April 2, 2014, the addenda IPC reports were sent to plaintiff's attorney.

On May 19, 2014, a letter was received from plaintiff's attorney enclosing letters from the plaintiff's treating physicians. These additional materials were forwarded to the IPCs for response.

On June 29, 2014, another addendum report was received from the occupational medicine IPC. On July 10, 2014, MetLife told plaintiff's attorney that it was awaiting transcription of illegible notes from the treating physician. The transcription was received on August 6, 2014.

On August 18, 2014, another addendum report was received from the psychiatric IPC. On August 25, 2014, the addenda IPC reports were faxed to plaintiff's attorney. On August 26, 2014, a letter from plaintiff's attorney confirmed that there would be no further responses from the treating physicians.

On October 7, 2014 and October 29, 2014, MetLife received letters from plaintiff's attorney.
On November 12, 2014, plaintiff moved to reopen the case. (ECF No. 42.) On January 2, 2015, the Court granted plaintiff's motion and ordered that the case be reopened. (ECF No. 48.) Based upon the Court's Order Granting Plaintiff's Motion to Reopen Case, wherein the Court ordered the case restored to active litigation so that it may proceed in parallel to any remaining administrative proceedings, MetLife is moving forward with rendering its decision and expects to issue the decision within the next week.

**d. Description of Relief Sought and Damages Claimed:**

Plaintiff is seeking:

1. All benefits due him in the past and future under the plan plus interest;

2. A declaration by this Court that, if in fact he is found to have been and/or continues to remain disabled under the terms of the controlling Plan documents, that all benefits provided to

1  Plan participants while they are disabled under this Plan and any other applicable welfare or
2  pension benefit plans covering plaintiff, be reinstated retroactive to the date his LTD benefits were
3  terminated.

4      3. Reasonable attorney fees;

5      4. Costs of suit; and

6      5.  Such other and further relief as this court may deem just and proper.

7  disability benefits from the date of his disability, and a declaration of his continued eligibility for
8  those benefits.

10      MetLife is not seeking damages in this action, but reserves its right to seek attorneys' fees
11  and costs of suit pursuant to 29 U.S.C. § 1132(g)(1).

12  **e.  Status of Discovery:**

13  <u>Plaintiff's Statement</u>

14      Plaintiff contends that discovery as to the completeness of the administrative record to be
15  eventually provided by MetLife and discovery outside the administrative record regarding the
16  conflict of interest of MetLife and the doctors it hired is permissible in this case.  *Abatie v. Alta*
17  *Health and Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) (en banc); *Welch v. Metropolitan Life Ins.*
18  *Co.*, 480 F.3d 942, 949-950 (9th Cir. 2007)("Because an ERISA plaintiff may be permitted to
19  supplement the administrative record with evidence of a conflict of interest on the part of the
20  defendant, *see* Tremain v. Bell Industries, Inc., 196 F.3d 970, 976–77 (9th Cir.1999), we agree
21  with Welch that *some* discovery aimed at demonstrating a conflict of interest may have been
22  appropriate."); *Nolan v. Heald College*, 551 F.3d 1148, 1153 (9th Cir. 2009) ("As noted in *Abatie,*
23  consideration of the conflict can 'affect judicial review,' and a court is required to consider the
24  conflict whenever it exists, and to temper the abuse of discretion standard with skepticism
25  'commensurate' with the conflict. 458 F.3d at 959, 965, 969. In considering how much or how
26  little to temper the abuse of discretion standard in a case such as the one before us, *Abatie* further
27  clarified that a district court could 'consider evidence outside the administrative record' to decide
28  the conflict's "nature, extent, and effect on the decision-making process.'"); *Walker v. Metropolitan*

*Life Ins. Co.*, 585 F.Supp.2d 1167, 1175 (N.D.Cal. 2008); *Wojno v. Cigna Group Ins.* 2011 WL 3236025, *1 (C.D.Cal 2011); see also *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 110-11, 128 S.Ct. 2343, 2347-48 (2008).

Plaintiff has requested on several occasions that MetLife provide a copy of the current administrative record but has not been provided one since filing his last appeal. Despite this, Plaintiff has propounded discovery requests to MetLife on January 20, 2015. Until plaintiff receives the entire bates-stamped administrative record he cannot be sure that he has sought all the discovery that may be appropriate and necessary. Assuming that MetLife provides Plaintiff with a copy of everything it contends to be the administrative record by the time of the Case Management Conference, Plaintiff believes a discovery cut-off date of June 17, 2015 would be appropriate.

MetLife's Statement

MetLife anticipates timely responding to plaintiff's discovery, but notes that in an action for recovery of ERISA-regulated employee benefits, such as the claims at issue here, the only type of discovery potentially available, in the discretion of the Court, is quite limited and must be narrowly tailored to the issue of whether the structural conflict of interest (created by the fact that MetLife both funds the Plan benefits through insurance and also makes claim determinations). The discovery plaintiff has propounded is outside of the permissible scope of discovery.

The applicable plan documents expressly grant discretion to the Plan's fiduciaries, including MetLife. As such, California Insurance Code § 10110.6 is irrelevant, and the standard of review will be abuse of discretion. See *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 2350, 171 L.Ed.2d 299 (2008). The Supreme Court has confirmed that a claim administrator's discretionary benefit determination will be upheld so long as it is reasonable, even where there is a structural conflict of interest. *Conkright v. Frommert*, 130 S.Ct. 1640, 1646 (2010). *See also Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (citations and footnote omitted): "The meaning of "abuse of discretion" is elucidated in our [prior case law]. There we held that the test for abuse of

discretion in a factual determination (as opposed to legal error) is whether 'we are left with a definite and firm conviction that a mistake has been committed,' and we may not merely substitute our view for that of the fact finder."

Thus, the central issue in the suit will be whether the determination of plaintiff's claim was an abuse of discretion – which it was not, as it was reasonable in light of the complete administrative record. See *Wells v. Reliance Standard Life Ins. Co.*, 285 Fed.Appx. 343 (9th Cir. 2008), *Salomaa*, *supra*. The discovery plaintiff has propounded is not consistent with the applicable law regarding claims for ERISA benefits; under applicable law, as noted above, any permissible discovery must be narrowly tailored to address only the issue of the structural conflict of interest. *See also Dilley v. Metropolitan Life Ins. Co*., 256 F.R.D. 643 (N.D. Cal. 2009) (granting protective order against plaintiff's attempts to obtain broad "conflict" discovery).

Even if the standard of review is *de novo*, however, plaintiff cannot show that "circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision." *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995), quoting *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 (4th Cir. 1993) (*en banc*). Although the Court has discretion, on *de novo* review, to consider evidence outside the record, the Ninth Circuit in *Mongeluzo* cautioned that "a district court should not take additional evidence merely because someone at a later date comes up with new evidence that was not presented" at the claim stage. *Mongeluzo*, *supra*, 46 F.3d at 944.

**f.  Proposed Dates:**

The Parties propose the following dates:

Motion Cut-off date: July 2, 2015

Opening Briefs due: July 22, 2015

Reply Briefs due: August 5, 2015

Trial: August 19, 2015

1  The parties request that the pre-trial conference and related filings be waived, as this case is
2  governed by ERISA and the trial will be a bench trial.  Given the limited scope of evidence, which
3  the parties believe will not involve live witness or expert testimony, a pretrial conference and the
4  related filings are unnecessary in this case.  Moreover, all evidence to be considered by the Court
5  will be presented in advance of the trial and oral argument.

7  DATED:                              /s/Paul FLeishman

   **THE FLEISHMAN LAW FIRM**
   PAUL FLEISHMAN
   Attorney for Plaintiff
   Robert Gordon

11 DATED:                              /s/Erin Cornell

   **SEDGWICK LLP**
   REBECCA A. HULL
   ERIN A. CORNELL
   Attorneys for Defendant
   Metropolitan Life Insurance Company

Joint Case Management Statement